27788, 27972. STONE MOUNTAIN SCENIC
RAILROAD, INC. v. STONE MOUNTAIN
MEMORIAL ASSOCIATION; and vice versa.

ARGUED JUNE 12, 1973 — DECIDED JUNE 28, 1973 —
REHEARING DENIED JULY 12, 1973.

*Swertfeger, Scott, Pike & Simmons, M. H. Blackshear,
Jr.,* for appellant.
*Arthur K. Bolton, Attorney General, Marion O. Gordon,
Courtney Wilder Stanton, Dorothy T. Beasley, David L. G.
King, Jr., Assistant Attorneys General, Harold N. Hill,
Jr., Deputy Assistant Attorney General, Wade V. Mallard,*

*Jr., David J. Bailey,* for appellee.

GRICE, Presiding Justice. This appeal and cross appeal emanated on January 26, 1970, when the Stone Mountain Scenic Railroad, Inc. filed in the Superior Court of DeKalb County an action against the Stone Mountain Memorial Association seeking declaratory judgment and injunctive relief.

In essence there are two over-all issues here. The first, raised in the railroad's complaint and urged in the appeal, is a claim involving an easement of ingress and egress to leased property. The second, set forth in the association's pleadings and embodied in the cross appeal, is a counterclaim seeking to recover contributions for advertising authorized by a lease agreement.

The complaint alleged basically as follows: that on or about October 6, 1960, the association entered into a lease contract with the railroad, a copy of which was attached to the complaint, by which it granted the railroad a lease upon certain lands described therein for a term of 20 years; that this land was to be used for the purpose of constructing and operating a scenic railroad around Stone Mountain wholly within the limits of the property owned by the association; that by instruments dated March 19, 1962, and September 26, 1966, copies attached, the original lease agreement between the parties was modified and amended, and as such has since continued in force and operation; that by the terms of paragraph 2 of the lease as amended the parties stipulated that no estate for years should pass to the lessee until such time as the railroad provided for in the contract was built and all rolling stock placed thereon and passengers were actually being carried for hire; and that this had occurred and it has been in operation since April 1962, so that the railroad now has an estate for years in the described land.

The railroad sought a declaratory judgment with respect to the interpretation of certain provisions of the lease contract and the rights and obligations of the

parties, describing the actual controversy as follows: that after the execution of the lease and the vesting of the estate for years the association implemented a policy of excluding from the memorial virtually all members of the general public and potential passengers of the railroad who had not paid a charge for admission to the memorial, which the association claims it has the right to do; that the railroad has obtained an implied easement of right-of-way as an appurtenance to its estate for years which extends to all patrons of the railroad; that the exclusion of persons who are unwilling to pay an admission charge, and charging the railroad's customers for admission to the memorial constitutes an unlawful interference with its right of easement; that in negotiations preceding the execution of the lease contract the association, to induce agreement, represented to the railroad that it would require contributions by each concessionaire at the memorial of 5% of gross income to a mutual cooperative advertising fund; and that in reliance on such representations the railroad agreed to certain provisions contained in paragraph 10 of the lease agreement, which will be more fully described herein.

The complaint further recited that notwithstanding the association's representations it did not obtain an agreement from any concessionaire other than the railroad to pay 5% of its gross income to an advertising fund, and it insists that paragraph 10 is valid and enforceable; but that the railroad contends that paragraph 10 is severable and all of its provisions are invalid and unenforceable for stated reasons.

The railroad requested and by order of the court dated January 29, 1970, was allowed to pay into the registry of the court the sum of $18,000 which was 5% of its gross income received in 1968.

In a subsequent amendment the railroad prayed that the association be temporarily and permanently enjoined from interfering with the right of ingress and egress to

its leasehold.

On February 24, 1970, the association filed a motion to strike certain portions of the complaint, and its answer and counterclaim.

The answer denied the essential allegations and averred that the complaint failed to state a claim upon which relief could be granted.

The counterclaim asserted that the railroad was presently indebted to it in the amount of $47,255.01 as the unpaid contribution of 5% of its gross income received in the fiscal years 1968 and 1969 under the terms of the lease contract.

On March 12, 1970, the association filed the first of extensive written interrogatories. Answers, affidavits and other motions were subsequently filed in this regard.

On August 14, 1971, the association filed a motion for summary judgment based upon all the pleadings, the first interrogatories and answers thereto, and specified affidavits.

This motion was heard on October 1, 1971, and on October 4, 1971, an order and judgment was filed granting partial summary judgment for the association and reciting in essential part as follows: that as to the claim that the association has interfered with the railroad's implied easement of necessity, there is no genuine issue of fact and the association is entitled to judgment as a matter of law; that as to the claim that the railroad was induced to give up valuable rights under an option agreement upon the promise of the association that the provision contained in paragraph 10 of the lease agreement would be required of all concessionaires, there exists a genuine issue of fact; that judgment is therefore entered for the association as to all claims for relief except the claim that the railroad was induced to give up valuable rights under an option agreement upon the promise of the association that the provision in paragraph 10 of the lease agreement would be required

of all concessionaires, and except the association's counterclaim, as to which there exist genuine issues.

The case was tried on the remaining issues beginning on June 5, 1972. Special verdicts were rendered by the jury on June 7, 1972, and a judgment was entered on December 29, 1972, declaring that the railroad had "no obligation to contribute 5% of its gross income to the advertising fund . . . unless and until like contributions are required by the defendant association of all concessionaires at the Stone Mountain Memorial Park."

On January 4, 1973, the railroad filed a notice of appeal from the grant of summary judgment rendered on October 4, 1971.

On January 12, 1973, having previously moved for a directed verdict, the association filed a motion in the alternative for judgment notwithstanding the verdict, or for new trial.

On January 17, 1973, the association filed its notice of cross appeal, expressly subject to its alternative motion previously filed "for the purpose of protecting its right to ultimate review pending determination as to the prematurity of the plaintiff's appeal."

On the same date (January 17, 1973) the railroad's appeal was docketed in this court. Since the association had designated that a transcript of the trial proceedings be included in the record on appeal an extension of time was sought and granted.

The association filed three motions to dismiss in this court.

The first complains that the docketing of the appeal in this court before the expiration of 15 days was prejudicial for specified reasons. The second asserts that the appeal was premature in that there was a motion pending in the trial court for judgment notwithstanding the verdict, or in the alternative for new trial. The third requested that the appeal be considered with the cross appeal, pursuant to Rules 21 and 22 of this court.

Thereupon, this court by order of March 6, 1973, removed the appeal from the March calendar and postponed it until the cross appeal was docketed for argument on June 12, 1973.

In the main appeal the sole enumeration of error is the portion of the summary judgment disposing of the ingress and egress claim of the railroad.

The cross appellant association asserts 33 enumerations of error. In the view which we take of this case it is not necessary to recite them here.

■ We have considered each of the motions to dismiss. We do not regard them as meritorious and they are therefore denied.

■ We next deal with the railroad's single enumeration of error on the appeal, the grant of summary judgment in favor of the association on its claim of implied easement.

This ruling was contrary to the railroad's claim that the association was unreasonably interfering with a way of egress and ingress to its leasehold estate.

The claim makes the basic contention that when the association leased to the railroad land lying wholly within the Stone Mountain Memorial, by implication of law the railroad obtained such a right of ingress and egress over the association's lands as is necessary to enjoy its grant and to make those uses of the leased property which the parties intended.

The railroad predicates its position upon the principle of implied way of necessity of ingress and egress for land-locked land, as embodied in Code § 85-1401.

This principle was recognized by this court in 1850 in *Brewer v. Bowman*, 9 Ga. 37, 39. See also *Muscogee Manufacturing Company v. Eagle & Phenix Mills*, 126 Ga. 210, 225 (54 SE 1028, 7 LRA (NS) 1139); *Calhoun v. Ozburn*, 186 Ga. 569 (2) (198 SE 706); *Jones v. Mauldin*, 208 Ga. 14 (1a) (64 SE2d 452), and cits.

Injunctive relief against the infringement of this right

is likewise well established. See *Barham v. Grant,* 185 Ga. 601, 606 (196 SE 43) and citations.

However, we do not regard the foregoing principle and authorities applicable because of additional factors present here.

In our view, the railroad has no implied easement of necessity and even if it did, the vehicle permit required by the association does not constitute an infringement of such easement.

In this regard, it should be kept in mind that the association is, in its discretion, authorized to establish charges for access to the memorial. The General Assembly created the association as a corporation of the state to develop and operate Stone Mountain as a Confederate Memorial and public recreational area. The association's powers include: "(i) To establish rates, tolls, fees and charges for its facilities and services, including *fees or charges for access to the memorial* and to alter such fees and charges, and to collect and enforce collection of the same . . ." (Emphasis supplied.)

These discretionary powers cannot be delegated by the association in the absence of statutory authority. See in this connection, *Levine v. Perry,* 204 Ga. 323 (3) (49 SE2d 820). Thus the association cannot surrender its power to establish and collect charges and fees for access to the memorial.

It follows that since the association cannot surrender its discretionary power by granting an *express* easement to the railroad for the benefit of its patrons, certainly no *implied* easement could result.

Furthermore, "Powers of all officers are defined by law, and all persons must take notice thereof. The public may not be estopped by the acts of any officer done in the exercise of a power not conferred." Code § 89-903. In the instant case the railroad either knew or should have known of the association's limited authority.

Also, it is equally clear that the vehicle permit charged

here is not an unlawful interference.

Present charges require a $2 annual permit for a family vehicle, $1 for a school bus, and $5 for commercial buses. No charge is made of regularly scheduled transit and sight-seeing buses.

It is important to note that the vehicle permit is not shown by the record to be an admission fee required of persons desiring to enter the memorial. Free access is permitted those persons who walk, or ride the buses referred to above, or passengers in vehicles which have the annual vehicle permit. These persons intending to ride the railroad are not denied access to the memorial.

Therefore, it is clear that the charge is a permit for vehicles which is authorized by the association's charter; and that this does not result in any unreasonable interference with the railroad's claim of implied easement of ingress and egress.

Even if the railroad as lessee, has an implied easement of ingress and egress, this right does not extend to the general public. It has no right of access to the railroad without first paying the vehicle permit for access to the memorial.

Upon consideration of the foregoing, we conclude that the trial court correctly ruled, upon the association's motion for summary judgment, against the railroad's claim of easement.

■ We turn to a consideration of the cross appellant association's enumerations of error.

The first is in substance that the trial court erred in failing to adjudicate the whole case upon its motion for summary judgment and in failing to enter judgment for the association on all grounds alleged in the railroad's complaint.

We agree.

In our view, the railroad's attack upon the advertising clause contained in paragraph 10 of the contract is an attempt to vary the terms of a valid written instrument

by parol evidence.

The lease contract provision under attack here provides as follows: "10. *Advertising:* The party of the second part shall pay on the first of each year a sum equal to five percent of its gross income for the previous years operations to an advertising fund to be established by the party of the first part and the said sum shall be used to advertise the activities, business and interests of the parties at Stone Mountain. The party of the second part may make such additional expenditures for general advertisement purposes as he shall deem necessary. Lessor agrees to expend the funds contributed hereunder for advertising within the calendar year in which it is paid and further agrees to diversify the media which is used in the advertising program."

The trial court allowed the railroad to introduce parol evidence in an attempt to establish that officials of the association had made certain oral statements in connection with the contract negotiations which led the railroad to believe that all concessionaires at the park would be required to contribute 5% of their gross incomes to the advertising fund to be established by the association, and which induced it to agree to the terms of paragraph 10 as set forth above.

In our view, however, the contract as written has a clearly ascertainable meaning and legal effect, which is consistent with the context of the paragraph in question and of the entire agreement. It is only when it is viewed in conjunction with the parol evidence that it becomes ambiguous.

The parol evidence operated to create a variance with the written instrument by making the railroad's obligation to pay under paragraph 10 conditional upon the association's imposing an identical obligation upon every other concessionaire at the memorial.

This court has consistently held that parol evidence cannot be used to change the terms of a written

instrument. See, e.g., *Smith v. Standard Oil Co.*, 227 Ga. 268 (1) (180 SE2d 691) and cits.

What was said in the *Smith* case is applicable here; that "This case is controlled by the principle, known as the 'parol evidence rule,' that a valid written contract, which is complete, and the terms of which are not ambiguous, can not be contradicted, added to, altered, or varied by parol agreements. *Stonecypher v. Ga. Power Co.*, 183 Ga. 498, 501 (189 SE 13); Code §§ 38-501, 20-704." *Smith v. Standard Oil Co.*, 227 Ga. 268, 269, supra.

Clearly the parties referred to in paragraph 10 above are the lessor association, which is the "party of the first part," and lessee railroad, which is the "party of the second part." These references are continuous and consistent throughout the entire contract.

In regard to the reference to the "fund to be established . . . to advertise the activities, business and interest of the parties at Stone Mountain," this clause is abundantly clear within the context of the agreement. It means that the fund to be established by the two parties, the railroad and the association, will be utilized to advertise the activities of the two parties at Stone Mountain; but that it will not be used to advertise the activities of either of the parties conducted at other locations.

Moreover, the contract recites that the railroad "shall pay" to the fund. This obligation is in no way made conditional upon payment by other concessionaires at Stone Mountain. It is absolute.

There was no evidence here that a separate and distinct oral promise was to be written into the agreement and, in fact, it was not. Therefore, since the agreement was complete and unambiguous on its face, the trial court erred in permitting the railroad to introduce parol contemporaneous evidence which contradicted and varied the terms of the valid written contract.

It should also be noted that in 1966 the association and railroad entered into an agreement amending the

original 1960 lease contract, which recites in pertinent part as follows: "5. Lessor [the association], recognizing that Lessee [the railroad] has expended large sums of money for advertising and promotional purposes during the years 1961 through 1965, agrees that . . . [$41,231.68] of such expenditures shall be allowed lessee as a credit against the amount which would otherwise be due and owing lessor for advertising pursuant to paragraph ten of the original lease. It is understood and agreed by the parties that this credit, coupled with the sum of . . . [$41,933.83] already paid by lessee to lessor under said paragraph ten, causes lessee's fiscal obligation to lessor thereunder to be current through December 31, 1965."

The evidence shows that this amendment was executed approximately two and a half years after the railroad became aware that the other concessionaires were not required under their contracts to pay or contribute 5% of their respective gross incomes to the association for advertising.

This amendment serves as an effective ratification of the original terms of paragraph 10. Moreover, the references in the later amendment to the amount "due and owing" the association and the "fiscal obligation to" it dispose of the railroad's contention that the provisions of the 1960 lease agreement are insufficiently detailed to show to whom the monies are to be paid or by whom expended..

It is well established that the existence or nonexistence of an ambiguity in a contract is a question of law to be determined by the court.

For the foregoing reasons the trial court erred in failing to grant the motion for summary judgment on all issues raised by the railroad's claim and the association's counterclaim.

The above ruling as to the inadmissibility of parol evidence to vary the terms of the lease contract in question is dispositive of all other issues raised in the

cross appeal.

*Judgment affirmed on main appeal, reversed on cross appeal. All the Justices concur.*