ROBERT E. McKEE, INC.

v.

The CITY OF ATLANTA.

SAMPLES GRADING, INC. and Economy Mechanical Industries, Inc., Plaintiffs,

v.

ROBERT E. McKEE, INC., Defendant and Third-Party Plaintiff,

v.

CITY OF ATLANTA, Third-Party Defendant.

Civ. A. Nos. C74–2506A and C77–14A.

United States District Court,
N. D. Georgia,
Atlanta Division.

May 9, 1977.

See also, D.C., 414 F.Supp. 957.

Harry L. Griffin, Jr., John D. Sours and Robert D. Marshall, Smith, Currie & Hancock, Atlanta, Ga., for McKee.

Brian Stone, Stone & Pennington, Atlanta, Ga., for Samples & Economy.

Ferrin Y. Mathews, City Atty. and Charles M. Lokey, Asst. City Atty., Atlanta, Ga., for City of Atlanta.

Harry L. Griffin, Jr. and Robert D. Marshall, Smith, Currie & Hancock, Atlanta, Ga., for McKee.

## ORDER

EDENFIELD, District Judge.

These two actions both arise from a construction contract with the City of Atlanta, and are before the court on numerous motions.

The facts underlying the claim in C74–2506A are set out in this court's order of May 11, 1976 and need not be repeated in detail here. Briefly put, McKee was the general contractor on a construction project for the City of Atlanta. During the work, McKee's subcontractors, Samples and Economy, encountered more sub-surface rock than expected. These subcontractors were therefore required to expend additional time and labor in removing the rock. McKee then brought C74–2506A against the City on its own behalf and on behalf of its subcontractors for compensation for the extra work. Apparently after certain rumblings were made by the City's attorneys as to the propriety of McKee bringing the action, Samples and Economy brought C77–14A against McKee to enforce McKee's contractual obligation to them to pursue the claim on their behalf. McKee then impleaded the City as a third-party defendant in C77–14A.

The procedural parrying began when the City moved to dismiss the third-party claim against it in C77–14A, and moved to require Samples and Economy to be added as additional parties plaintiff in C74–2506A. If these motions were granted, the City would be dismissed from C77–14A, and C74–2506A would have to be dismissed in its entirety because of lack of complete diversity between the parties. Obviously not liking this approach, McKee opposed the motions and instead moved to consolidate the two actions as currently composed. The City's attorneys then apparently gave the situation a little more thought and decided that McKee didn't really have any legal right to bring the rock claim anyway. They therefore filed a motion for summary judgment in C74–2506A. When the dust had cleared, the court was faced with eight briefs addressing the various motions. The court finds that a ruling on the City's motion for summary judgment will be dispositive of all the issues.

The City must concede that Samples and Economy are not in privity with the City; the City's contract is with McKee

only. The City must also concede that the contract between McKee and Samples and Economy respectively requires McKee to submit any claims for additional work made by these subcontractors to the City, and requires McKee to pursue whatever remedies are available against the City. It also concedes that on October 19, 1972, McKee acknowledged, by written agreement, its duty to bring the rock claim against the City on behalf of Samples and Economy. Finally, the City concedes that, under these facts, McKee is entitled to pursue the claim against the City, *J. L. Simmons Co. v. United States,* 304 F.2d 886, 158 Ct.Cl. 393 (1962); *Keydata Corp. v. United States,* 504 F.2d 1115, 1120–21, 205 Ct.Cl. 467 (1974). In *Simmons,* the court held that a contractor could pursue claims on behalf of its subcontractor if it was under a legal obligation to the subcontractor to do so. The fact that the contractor could be liable only to the subcontractor for whatever amounts it recovered against the government was not considered a bar. The City seeks to distinguish *Simmons,* however, on two grounds: (1) an unconditional release executed by Samples and Economy in favor of McKee extinguishes McKee's obligation to pursue their rock claim, and (2) an unconditional release executed by McKee in favor of the City bars any action by McKee.

The subcontractors' general releases were executed on March 12, 1974, and the McKee release was executed on July 3, 1974. All of the releases were form contracts which stipulated that the party executing the release had been paid in full for the services rendered. The releases were made so that the subcontractors and McKee, in turn, could receive their final payments under the contracts. It is important to note that all of the releases were executed well after the subcontractors raised the rock claim with McKee, and after McKee made its claim to the City. In fact, in a letter to city officials dated March 26, 1974, McKee's vice president stated the following:

> It is understood we have yet to settle our claim for additional rock excavation and also our request for the 1% MARTA TAX and that our receipt of this $10,000.00

final payment will not affect nor waive any of our rights pertaining to these two above named claims.

The City obviously understood the import of this letter, since negotiations continued on the claims after the release had been executed and the City never raised the release as a defense to the claims. In fact, the City eventually paid the MARTA claim, and made the final payment under the contract (for which the release had been executed) after McKee's lawsuit against the City had been initiated. Obviously, therefore, McKee's release was not intended by either party to compromise the rock claim against the City.

The same is true in regard to the subcontractors' releases of McKee. Officers of the subcontractors and McKee stated in their depositions that they had come to an explicit agreement that the subcontractors' releases were not meant to affect the rock claim. They were merely executed so that the subcontractors, and eventually McKee, could receive payment for what they were owed under the contract.

It is interesting to note that the City has never contended that the intentions of the parties were otherwise. In fact, the City never even raised the McKee release as an issue until now, over two years after the action was initiated, and after this court issued an order dealing with the substantive merits of McKee's claim. Now the City seeks to undercut McKee's standing by relying on releases it knows were meant to be inapplicable to the claim at issue.

■ Fortunately, the law will not allow such an inequity to occur. The Court of Claims has held that the execution of a general release to the government will not bar the contractor from bringing claims inconsistent with the release, where the parties' actions subsequent to the release evidence either their understanding that the release does not apply to the claim, or the government's waiver of the release, *Winn-Senter Construction Co. v. United States,* 75 F.Supp. 255, 260, 110 Ct.Cl. 34 (1948); *Houdaille Industries v. United*

*States,* 151 F.Supp. 298, 309–10, 138 Ct.Cl. 301 (1957); *compare Adler Construction Co. v. United States,* 423 F.2d 1362, 191 Ct.Cl. 607 (1970), *cert. den.,* 400 U.S. 993, 91 S.Ct. 461, 27 L.Ed.2d 441 (1971), *reh. den.,* 401 U.S. 949, 91 S.Ct. 923, 28 L.Ed.2d 233 (1971); *see also Elyea-Austell Co. v. Jackson Garage,* 13 Ga.App. 182 (1913). This principle has also been applied with regard to waivers executed by subcontractors in favor of general contractors, *Fischback & Moore International Corp.,* ASBCA No. 18146, 77–1 BCA ¶ 12,300, pp. 59,204, 59,-228–30 (1976). In *Fischback,* the Armed Services Board of Contract Appeals allowed a contractor to pursue the claims of a subcontractor, even though the latter had released the former from any further liability under the contract. The Board found that the contractor and the subcontractor had pursued a consistent course of conduct before and after the release which demonstrated their mutual intent that the contractor pursue the claim at issue.

Applying these principles to the facts of this case, it is apparent that (1) the City waived the application of the release by paying McKee's MARTA claim and by continuing negotiations on the rock claim after the release had been executed; and (2) McKee waived the subcontractors' release by continuing to negotiate with the City and by filing this action in December, 1974. Thus, McKee is entitled to bring C74–2506A on behalf of its subcontractors, *J. L. Simmons Co., supra.*

For the foregoing reasons, the City's motion for summary judgment in C74–2506A is DENIED, Rule 54(c), Fed.R.Civ.P. Moreover, since Samples and Economy are not necessary parties to that action, the City's motion to join them as parties plaintiff is also DENIED, Rule 19(c), Fed.R.Civ.P. The court declines to rule on the motions in C77–14A, since the court anticipates that the action will be voluntarily dismissed by consent of plaintiff and defendant. The court therefore DEFERS ruling on the motion for twenty (20) days and DIRECTS the clerk to resubmit C77–14A at the end of that time if the action has not been dismissed.

So ORDERED, this 9th day of May, 1977.