ASSOCIATED MECHANICAL CONTRACTORS, INC., Plaintiff,

v.

MARTIN K. EBY CONSTRUCTION COMPANY, INC., Defendant.

Civil Action No. 95–94–3–MAC(WDO).

United States District Court,
M.D. Georgia,
Macon Division.

May 14, 1997.

John Flanders Kennedy, Macon, GA, David R. Hendrick, Victoria H. Tobin, Atlanta, GA, for Plaintiff.

Wallace Warren Plowden, Jr., Macon, GA, George D. Wenick, Atlanta, GA, for Defendant.

## *ORDER*

OWENS, District Judge.

This case is before the court on defendant's second motion for summary judgment. Oral arguments were held March 3, 1997. Based upon the oral arguments of counsel, the relevant case law, and the record as a whole, the court issues the following order.

### I. *Background*

The dispute between the parties arises out of the construction of the Dooly Correctional Institution in Unadilla, Georgia. Plaintiff Associated Mechanical Contractors, Inc. ("AMC"), was a subcontractor on the project, and defendant Martin K. Eby Construction Company, Inc. ("Eby"), was the general contractor. AMC was responsible under its written subcontract for performance of the mechanical, heating, ventilation, air conditioning and plumbing work, in consideration of an original subcontract amount of more than $3,000,000. The project was ultimately completed in 1992. AMC has been paid the full agreed-upon subcontract price, except for retainage, as adjusted and increased by several change orders. Payment of the subcontract amount was made by interim payments, which were based on twenty-six separate applications for payment which AMC submitted at various times during progress of the construction. AMC's claim for retainage in the amount of $255,763.37 has not been made a part of this lawsuit since the amount is not due to AMC until the owner releases the corresponding amount to Eby under the prime contract.

The present lawsuit concerns AMC's request for equitable adjustment by which it seeks additional compensation in the principal amount of $737,343.96. This amount is for delays and disruptions which AMC alleges it continually encountered on the project because of the actions of Eby and Eby's

other subcontractors, resulting in additional costs to AMC. AMC provided Eby notice numerous times throughout 1991 and 1992 of its delay claims. Discussions of the claims were conducted up until the spring and summer of 1992, when Eby and AMC negotiated submitting the delay claims of both Eby and the subcontractors to the owner. However, none of the claims submitted by AMC were ever paid, and in November of 1992 AMC submitted to Eby its request for equitable adjustment representing AMC's final calculation as to all the cost impacts it claimed as a result of the alleged disruptions and delays. These claims remain unresolved and constitute the subject of this lawsuit.

On April 17, 1995, Eby filed its first motion for summary judgment. Eby argued that the standard release language on each of the twenty-six applications for payment submitted by AMC operated as a waiver and release of all claims relating to the work performed through the date of each application, except for retainage. The same argument had been made in a related case in this court filed by another of Eby's subcontractors, styled *Allgood Electric Company, Inc. v. Martin K. Eby Construction Company, Inc.*, Civil Action No. 93–125–1–MAC(WDO). Convinced by the argument in the Allgood case as to the effect of the release language, this court granted summary judgment for Eby. Thereafter, in *Allgood Electric Co. v. Martin K. Eby Construction Co.*, 85 F.3d 1547 (11th Cir.1996), the Eleventh Circuit reversed the grant of summary judgment, holding that the release language on the application for payment forms did not release all causes of action Allgood may have had against Eby but rather released only claims or liens against the property itself. In dicta, however, the court of appeals turned its focus to the first paragraph of the standard release language, which had not been relied on by either party. This paragraph, which is identical to the language in the applications for payment which AMC signed, provides:

I hereby certify that the work performed and the materials supplied to date, as shown on this application represent the actual value of accomplishment under the terms of the contract (and all authorized changes thereto) between the undersigned

and Martin K. Eby Construction Co., Inc., relating to the above referenced project.

Referring to this provision, the court of appeals remarked that, "Unlike the completion certificate and the clause of the payment applications relied upon by Eby, this section of the payment applications specifically identifies Eby. By this provision of the applications, Allgood appears to have certified that the amount billed represented the actual value of its performance for the periods of time indicated by the dates of the applications. This would seem to bar recovery for any additional costs allegedly incurred by Allgood during the course of construction for the periods of time represented by the invoices." *Allgood*, 85 F.3d at 1554. The court of appeals remanded the case for a determination by this court as to the effect of Allgood's certification to Eby that the amounts sought by the periodic payment applications represented the actual value of Allgood's performance for the specified periods of time, as well as for a determination whether Allgood had complied with the notice provisions of Section 11 of the subcontract. *Id.* at 1555.

Section 11 of the *Allgood* subcontract is identical to Section 11 of the subcontract between Eby and AMC. It provides:

SECTION 11. DELAYS. Subcontractor shall not be entitled to an adjustment in time or Subcontract price for delays or damages caused by the Owner and/or Architect–Engineer, inclement weather, strikes, or other delays or damages unless such price change or time extension is approved in writing by the Owner or its authorized representative. Any damages which Subcontractor alleges that the Owner, Architect–Engineer, Contractor, other Subcontractor, or any other party for whom Contractor may be liable has caused him or is causing him must be filed in writing with the Contractor within ten (10) days from the commencement of the alleged damage and a full accounting filed within ten (10) days after the extent of damage is known or the cause for damage ceases, whichever is the sooner; otherwise, any such claims will be considered void.

Because Eby's first motion for summary judgment in the case sub judice was based solely upon the argument squarely rejected in *Allgood* as to the release language contained in the payment applications, this court denied the first motion by order of July 12, 1996.[1] Thereafter, focusing upon the court of appeals' comments as to the effect of the "actual value" language in the release language of the applications for payment, Eby filed its second motion for summary judgment.

## II. Summary judgment standard

█ Federal Rule of Civil Procedure 56(c) provides that summary judgment may be entered in favor of the movant where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is (1) no genuine issue as to any material fact and that (2) the moving party is entitled to judgment as a matter of law." *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Irby v. Bittick,* 44 F.3d 949, 953 (11th Cir.1995). The interpretation of the written contract between the parties is properly subject to disposition by summary judgment. *See Sims' Crane Service, Inc. v. Reliance Insurance Company,* 514 F.Supp. 1033, 1036 (S.D.Ga.1981), *aff'd,* 667 F.2d 30 (11th Cir. 1982). Any issue of fact found by the court must be genuine, and the factual dispute must be material to the outcome of the litigation. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. The party moving for summary judgment is entitled to such as a matter of law only where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once a party has moved for summary judgment and properly supported its motion, the burden shifts to the nonmovant to create, through the evidentiary forms listed in Fed.R.Civ.P. 56(c),

genuine issues of material fact necessitating a trial. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553.

## III. Discussion

In reliance upon the dicta in the Eleventh Circuit's *Allgood* opinion, Eby urges this court to find that by certifying to Eby in each monthly application for payment that the work performed and the materials supplied to that date represented the actual value of accomplishment under the terms of the contract and all authorized changes thereto, AMC is foreclosed from contradicting such sworn assertions by submitting additional claims for delays and disruptions under the subcontract. Eby submits that the "actual value" language contemplated that AMC would represent to Eby the value of all its work performed between the dates recited on the form regardless of whether the work was completed under the original subcontract or whether it was additional work occasioned by delays or disruptions. Eby argues that since all work performed by AMC necessarily had value in order to justify AMC's requesting a change order for the work, the unresolved claims were necessarily required to be included within the certified value recited on the applications for payment.

AMC certified to Eby that the work and materials supplied to the date of the certification represented the actual value of accomplishment *under the terms of the contract (and all authorized changes thereto).* Each of the twenty-six applications for payment on Eby's standard form incorporated the approved "schedule of values" for AMC's work and reflected the percentage of such values which were completed in each period. Reference to a schedule of values is contained in Section 14.2 of the supplements to the conditions of the subcontract between Eby and AMC, which provides:

> Subcontractor shall within 10 days of execution of the Subcontract submit on a form provided by the Contractor a Schedule of

---

1. Upon remand of the *Allgood* case, the court considered the relevant provisions in accordance with the instructions of the Eleventh Circuit and determined that Allgood was barred from pursuing its delay claims as a result of its failure to comply with the notice provisions of Section 11 of the subcontract. This ruling made it unnecessary to consider whether the "actual value" language in the applications for payment also foreclosed the assertion of additional delay claims.

Values of the various parts of the subcontracted work divided in such manner as to facilitate progress payments. Subcontractor's Schedule of Values shall have a complete breakdown of the subcontract price into work activities arranged and itemized aggregating the total sum of the subcontract. This Schedule combined with other subcontractors' and vendors' schedules will be submitted to the Architect. Upon approval of the Architect of the overall Payment Schedule and the approval of the Contractor of each Subcontractor's Schedule, *the Subcontractor's Schedule of Values will become the basis for monthly Applications for Payment.* [Emphasis supplied.]

■ In apparent reference to this language, Eby's application for payment forms contain spaces for a description of the work completed by AMC and its scheduled value. The forms contain spaces for AMC to describe the amount of work completed to date as well as a space for "scheduled value." AMC correctly asserts that the standard language in each application for payment must not be read in isolation. Instead, the language must be read with reference to the contract in its entirety. When considered in reference to each other and as parts of the contract in its entirety, the schedule of values submitted by AMC along with the application for payment form supplied by Eby provide both a procedure for requesting interim payments and an overall guide as to the monetary value of the work done in each time interval. The procedure described in the subcontract and the wording of the form applications contemplate that AMC could receive monthly or interim payments based upon its work accomplished up to the date of each application for payment.

AMC contends that the certification language is unambiguous and that it refers only to work AMC performed within the defined subcontract scope of work and price as adjusted by authorized change orders pursuant to Section 10 of the Subcontract,[2] but not to the unresolved claims for adjustment under Section 11 not yet reduced to authorized change orders. Eby argues that the certification language in the applications for payment encompassed the value of both resolved and unresolved claims for all work performed. Under Eby's interpretation, and under the meaning deemed apparent by the Eleventh Circuit, each interim application for payment encompassed not only those agreed-upon amounts referred to under Section 14.2 of the supplements to the conditions of the subcontract but also the claims for disruptions or delays submitted under Section 11.

■ Because jurisdiction in this case is based on diversity of citizenship, the substantive law of Georgia controls. *Flintkote Co. v. Dravo Corp.,* 678 F.2d 942, 945 (11th Cir. 1982); *Allgood,* 85 F.3d at 1551. Under Georgia law, it is for the court to determine whether the terms of a contract are ambiguous. *Stone Mountain Scenic Railroad, Inc. v. Stone Mountain Memorial Association,* 230 Ga. 800, 199 S.E.2d 216 (1973); *Georgia R.R. Bank & Trust v. Fed. Deposit Ins.,* 758 F.2d 1548, 1551 (11th Cir.1985). Ambiguity has been defined as "duplicity, indistinctness, an uncertainty of meaning or expression." *See Salvatori Corp. v. Rubin,* 159 Ga.App. 369, 372, 283 S.E.2d 326, 328 (1981). Where the contract language is definite, unambiguous, and capable of only one reasonable interpretation, the court will not consider the surrounding circumstances in order to interpret it. *Id.* However, where an ambiguity exists the court has the duty of resolving the ambiguity by applying the rules of construction set forth in O.C.G.A. § 13–2–2. *See Smith v. Freeport Kaolin Co.,* 687 F.Supp. 1550 (M.D.Ga.1988). A writing which pur-

2. Section 10 provides in part:
SECTION 10. CHANGES IN THE WORK. Contractor may at any time and without notice to Subcontractor's surety, if any, make changes in, additions to, deletions from the Work to be performed by Subcontractor pursuant to this Subcontract upon the Contractor providing the Subcontractor written notice of such change.... [T]he Contractor shall have no obligation to pay Subcontractor for any change, additional cost or extra work incurred by the Subcontractor, nor to extend the time for performance unless such price change or time extension is approved in writing by the Owner or its authorized representative: in which event, Subcontractor shall be entitled to such pay, change and/or time extension which the Owner, or its authorized representative, has approved regarding the Subcontractor's claim....

ports to relinquish rights is subject to the same rules of construction as govern ordinary contracts. *Thomaston v. Fort Wayne Pools, Inc.,* 181 Ga.App. 541, 352 S.E.2d 794 (1987).

The Eleventh Circuit's interpretation of the "actual value" language as foreclosing any additional claims by AMC is inconsistent with the procedure provided in Section 11 for asserting a claim for disruption or delay caused by Eby. Consequently, the terms of the payment application are ambiguous when considered in conjunction with the relevant provisions of the subcontract. The meaning of the "actual value" language therefore cannot be determined without reference to the underlying agreement between the parties interpreted utilizing the principles set forth in O.C.G.A. § 13–2–2.

■ Section 11 requires timely notification to the contractor within ten days from the commencement of a claim for alleged damages for disruption or delay. However, the notification provision does not require a full accounting of the extent of the asserted damages until ten days after the extent of the damage is known or the cause for damage ceases. A subcontractor asserting claims under Section 11 could make numerous timely claims for damages caused by delay yet be unable to account fully for the extent of any of those damages until completion of the construction project. Under Eby's interpretation of the "actual value" language, the subcontractor would nevertheless be required to include a full accounting for the delay damages as a part of each month's applications for payment or to forfeit its right to receive damages for delay. From another standpoint, under the interpretation urged by Eby a subcontractor unable to submit the full accounting of the value of its claims for delay, but wishing to preserve such claims, must forfeit its right to receive the interim payments permitted by the subcontract. Such forfeitures are disfavored under Georgia law: "While forfeitures are not unlawful, the law does not favor them, and all ambiguities in a contract are to be resolved against their existence." *APAC–Georgia, Inc. v. Department of Transportation,* 221 Ga.App. 604, 472 S.E.2d 97 (1996); *A.L.*

*Williams & Assoc. v. Faircloth,* 259 Ga. 767, 768, 386 S.E.2d 151 (1989).

■ In determining the proper resolution of the ambiguous contract provisions, the cardinal rule for a court is to ascertain the intention of the parties. *Jones v. Destiny Industries,* — Ga.App. —, 485 S.E.2d 225 (1997); *Flagg Energy Development Corporation v. General Motors Corporation,* 223 Ga. App. 259, 477 S.E.2d 402 (1996). The meaning of ambiguous terms may be resolved by reference to the conduct of the parties which evidence such intent. *Pine Valley Apts. Ltd. v. First State Bank,* 143 Ga.App. 242, 237 S.E.2d 716 (1977). In addition, the court must endeavor to construe the contract in such a way as will uphold each provision of the contract rather than considering one provision in isolation. *Morgan Guar. Trust Co. v. Atlanta Nat'l Real Estate Trust,* 149 Ga. App. 118, 253 S.E.2d 774 (1979); *see* O.C.G.A. § 13–2–2(4). To uphold Eby's interpretation of the "actual value" language would result in rendering meaningless either a subcontractor's right to receive interim payments for agreed-upon work performed under the subcontract or its right to assert a claim for delay damages. Such interpretation is disfavored under O.C.G.A. § 13–2–2(4).

Eby's application for payment forms contain no direction or space for listing any pending or unresolved claims in order to exclude their value from the interim payments requested. AMC correctly points out that had the parties' purpose been to include unresolved delay claims within the "actual value" language, precise language could have been utilized to so indicate. Instead, the language refers to the value of accomplishment under the contract and all *authorized* changes thereto. Since the claims for delays under Section 11 were not made pursuant to authorization by Eby or the owner, a fair reading of the contract in its entirety limits the meaning of the "actual value" language to changes which were so authorized.

■ Similarly, the subcontract contains no provision requiring a release of claims for delay prior to AMC's receiving interim payments. In contrast, Paragraph 14 of the

subcontract provides that retainage and final payment will not be issued until AMC "completes, executes and files with the Contractor a release" and "all disputes, claims, liens, causes of action and/or lawsuits ... are resolved." All the above factors evidence a lack of intent by Eby to make forfeiture of a subcontractor's right under Section 11 to make a claim for delays a condition precedent to receiving interim payments for the value of work already performed under the contract and the approved change orders. It is well established under Georgia law that any ambiguities in a contract will be construed against the drafting party. *Crook v. West,* 196 Ga.App. 4, 395 S.E.2d 260 (1990); *National City Bank of Rome v. Busbin,* 175 Ga.App. 103, 107, 332 S.E.2d 678 (1985); O.C.G.A. § 13–2–2–(5). The ambiguity of the reference in the "actual value" language to "authorized" changes vis-à-vis the provisions of the Section 11 notice paragraph must be construed against Eby as drafter. To construe the provisions otherwise would create an internal inconsistency with respect to the procedure for asserting a delay claim, resulting in a forfeiture of rights by AMC.

AMC also argues that Eby's acknowledgment and processing of AMC's delay claims after execution of the application for payment forms evidence an intent inconsistent with Eby's present contention that AMC waived its delay claims by certifying to the "actual value" language on the payment application forms. In *Robert E. McKee, Inc. v. City of Atlanta,* 431 F.Supp. 1198 (N.D.Ga. 1977), the court referred to the general principle stated by the Court of Claims that "the execution of a general release to the government will not bar the contractor from bringing claims inconsistent with the release, where the parties' actions subsequent to the release evidence either their understanding that the release does not apply to the claim, or the government's waiver of the release [citations omitted]." *McKee,* 431 F.Supp. at 1200. Noting that this principle was also applicable with regard to waivers executed by subcontractors in favor of general contractors, the court held that the City of Atlanta's continuing negotiations with McKee concerning claims for additional rock excava-

tions, after McKee had signed a form contract release in order to receive final payment under the contract, demonstrated that it did not intend for the release to affect McKee's additional claims. *Id.* at 1199.

AMC argues that Eby's failure to rely upon the "actual value" language prior to the time the Eleventh Circuit referred to it in the *Allgood* case is evidence that Eby never intended the language to foreclose AMC's claims. The court views this argument as unpersuasive. In its first motion for summary judgment Eby relied upon the standard release language to support its argument that AMC had waived its right to pursue its claim against Eby. Eby's failure to rely on the first paragraph of the release language to the exclusion of the remaining provisions should not be considered against it. However, the fact of Eby's continuing negotiations with AMC concerning the delay claims during the time period that AMC continued to submit applications for payment is evidence, as in *McKee,* that Eby did not intend the "actual value" language to encompass delay claims under Section 11.

Eby asserts that its negotiations with AMC did not amount to a forfeiture of its rights under the subcontract and that it notified AMC by letter that its efforts to aid AMC in its prosecution of its claim against the Owner were not to be construed as a waiver of any rights or defenses available to Eby. The mutual conduct of parties to a contract may waive the original contract terms, resulting in a "mutual departure" or "mutual disregard" of the contract language. *Cho v. South Atlanta Associates, Ltd.,* 200 Ga.App. 737, 409 S.E.2d 674, 676 (1991); O.C.G.A. § 13–4–4. Eby correctly asserts that its mere consideration of AMC's claims was not sufficient to effect a forfeiture of its rights under the subcontract. However, the question of forfeiture is not applicable in this case. This court has determined that any ambiguities in the contract as a whole are resolvable by application of the principles set forth in O.C.G.A. § 13–2–2 and that the parties did not intend for the "actual value" language in the payment applications to fore-

close AMC's right to assert claims for delay. The fact that Eby discussed AMC's delay claims and offered to submit them to the owner is merely evidence that Eby viewed the claims as being properly submitted under the subcontract regardless of Eby's ultimate view as to the validity of AMC's claims.

For the reasons stated hereinabove, defendant's motion for summary judgment is hereby **DENIED.**

**SO ORDERED.**