United States Court of Appeals,

Eleventh Circuit.

No. 95-8572.

ALLGOOD ELECTRIC COMPANY, Plaintiff-Appellant,

v.

MARTIN K. EBY CONSTRUCTION COMPANY, INC., Federal Insurance Company, Fidelity and Deposit Company of Maryland, Defendants-Appellees.

June 25, 1996.

Appeal from the United States District Court for the Middle District of Georgia. (No. 93-125-1MAC(WDO), Wilbur D. Owens, Jr., Judge.

Before ANDERSON and BLACK, Circuit Judges, and HENDERSON, Senior Circuit Judge.

PER CURIAM:

This appeal arises out of a construction contract dispute between Allgood Electric Company ("Allgood") and Martin K. Eby Construction Company, Inc. ("Eby"). On March 12, 1993, Allgood, an electrical subcontractor for a building project, filed suit in the Superior Court of Dooly County, Georgia against Eby, the contractor, and Eby's sureties, Federal Insurance Company ("FIC") and Fidelity & Deposit Company of Maryland ("FDCM"). [1] The defendants subsequently removed the case to the United States District Court for the Middle District of Georgia predicating jurisdiction on diversity of citizenship. *See* 28 U.S.C. §§ 1332, 1441. Thereafter, on April 13, 1994, the district court granted summary judgment in part in favor of the defendants. Allgood then appealed. This court dismissed the appeal for lack of jurisdiction

_____

[1] Eby provided a payment bond for the construction project which was underwritten by FIC and FDCM.

because the order granting partial summary judgment did not dispose of all of the issues raised in the complaint and it had not been certified for immediate review in accordance with Fed.R.Civ.P. 54(b).[2] Later, the district court directed that a Rule 54(b) judgment be entered and Allgood appealed again. For the reasons that follow, we reverse the district court's grant of summary judgment and remand for further proceedings.

## I. BACKGROUND

On January 10, 1990, Eby entered into a contract with the Georgia Building Authority (Penal) ("GBA") to build the Dooly Correctional Institution in Unadilla, Georgia. Pursuant to a subcontract dated January 29, 1990, Allgood then agreed to perform certain electrical work for the project at a stipulated price. After its work was completed, Allgood filed this action alleging, *inter alia,* that Eby failed to properly coordinate the various phases of the prison's construction and that Eby's mismanagement in that respect caused delays which resulted in increased expense to Allgood. Allgood sought to recover these alleged additional costs from Eby and also claimed entitlement to certain sums of money which had been retained in accordance with the prime and

---

[2]Generally, appeals may be taken only from "final decisions of the district courts" which end the litigation. 28 U.S.C. § 1291. When a district court grants judgment with respect to fewer than all of the claims or parties involved in an action, an immediate appeal is proper when the court directs that its judgment be deemed final in accordance with Rule 54(b). Rule 54(b) permits "the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

subcontracts[3] pending the completion of construction.[4]

Eby subsequently moved for summary judgment. It contended that, during the course of construction, Allgood executed certain form documents that either waived or released all of its demands against Eby. The forms included approximately twenty-four applications for payment and a completion certificate. In support of the motion, Eby submitted, in addition to other evidence, what appears to be photocopies of these documents.

The payment applications identified the project and were addressed to Eby. Each application specified that it was for work performed by Allgood for a certain period of time and stated that,

> in consideration of the payment received, and upon receipt of the amount of this request, the undersigned does hereby waive, release, and relinquish all claim or rights of lien which the undersign [sic] may now have upon the premises above described except for claims for right of lien for contract and/or change order work performed to extent [sic] that payment is being retained or will subsequently become due.

(R1-35, Deposition of Gloria A. Alday, Exhibit 6). The sworn, notarized signatures of Allgood's President, Gloria A. Alday, or

---

[3]By the prime contract, we mean the contract between Eby and the GBA.

[4]The original complaint contained eleven counts. Counts I through X consisted of general allegations concerning the mismanagement Allgood attributed to Eby. For example, Count II complained in part that Eby altered the planned work schedule upon which Allgood calculated its bid, which "resulted in inefficiency costs including extra labor and material costs as well as delays, unabsorbed overhead and ripple costs for which Eby should be responsible." (R1-1, Complaint at ¶ 16). Count XI described several items for which Allgood had previously sought payment during the course of construction. Counts I through XI will be referred to collectively as the "delay claims." The amended complaint added Count XII, which alleged that Eby owed Allgood approximately $136,000.00 of funds retained pending completion of the project. This count will be designated the "retainage claim."

its Vice-President and Project Manager, Timothy A. Morgan, appeared on the applications.

The completion certificate made a part of the record by Eby was addressed to the Georgia State Financing and Investment Commission ("GSFIC"), which was responsible for discharging the state's administrative duties with respect to the construction. This form also identified the project and stated that it was a "Certificate Regarding Subcontractor's Completed Work and Retainage Release." (R1-33, Affidavit of Charles Schultz, Attachment)[5]. The body of the document contained the following language:[6]

> 1. This is to certify that our work is one hundred percent complete for our subcontract number S28328-21804 and request that our retainage be released in accordance with the contract documents. Our scope of work included the Division 16 Electrical material and installation. The total amount of retainage due is $138,949.06.

> 2. The Subcontractor hereby certifies that all work required under the above contract has been performed in accordance with the terms thereof, that all materialmen, subcontractors, mechanics, and laborers have been paid and satisfied in full, and that there are no outstanding claims of any character (including disputed claims or any claims to which the subcontractor has or will assert any defense) arising out of the performance of the contract which have not been paid and satisfied in full except as listed hereinbelow:

> [Enter "None" or List]

> 3. The Subcontractor further certifies that to the best

[5]Eby submitted two different copies of the completion certificate. One was attached as Exhibit 7 to Gloria A. Alday's deposition. The other was attached to the affidavit of Charles Schultz, Eby's Operations Manager for the Building Division. (*See* R1-33). The text of both forms looks as if they were photocopied, but the signatures affixed to the copy attached to Schultz's affidavit appear to be original.

[6]Both copies of the completion certificate made a part of the record are of poor quality and portions of certain words are illegible. We have supplied the missing letters where necessary by deducing what they should be from the context.

of his knowledge and belief there are no unsatisfied claims for damages resulting from injury or death to any employees, subcontractors, or the public at large arising out of the performance of the contract, or any suits or claims for any other damage of any kind, nature, or description which might constitute a lien upon the property of the Owner.

4. The Subcontractor makes this certificate for the purpose of receiving final payment in full settlement of all claims against the Owner arising under or by virtue the [sic] contract, and acceptance of such payment is acknowledged as a release of the Owner from any and all claims arising under or by virtue of the contract.

5. Payments pursuant to this certificate shall in no way diminish, change, alter or affect the rights of the Owner under the contract documents.

(*Id.*) ("Enter "None' or List" in the original). [7] The bottom of the form contained spaces for the signatures of representatives of Allgood, Eby and the architect for the project, Rosser Fabrap International. A notice printed below the signature spaces stated "GEORGIA STATE FINANCING AND INVESTMENT COMMISSION MUST RECEIVE A COPY WITH ALL ORIGINAL SIGNATURES." (*Id.*). The signatures of Allgood's President, dated June 8, 1992, and Eby's Operations Manager, dated June 16, 1992, were affixed to the certificate, but the space for the architect was left blank.[8] Attached to the copy of the form was a photocopy of a letter dated June 10, 1992, addressed to Eby and signed by Lynne Crutchfield, an Allgood secretary. It stated, in pertinent part, "[e]nclosed please find our signed release of retained funds, for work performed by our company on the subject project." (Deposition of Gloria A. Alday, Exhibit 7).

---

[7]No outstanding claims were listed or attached to the certificate.

[8]The copy of the form submitted with Alday's deposition shows only her signature.

It its brief in support of the motion for summary judgment, Eby urged that the quoted language from the payment applications waived and released all of Allgood's demands for further payment except for contract and change order work to be performed in the future.  Eby also contended that all of Allgood's claims, except for retainage, were barred by the completion certificate.

In response, Allgood argued, *inter alia,* that the waiver and release language in the payment applications referred only to lien rights against the premises and not to any indebtedness owed by Eby under the subcontract which became due subsequent thereto.  It contended that its delay claims "matured" only after its performance under the subcontract was finally completed. (R2-38, Brief in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment at 7).  In the alternative, Allgood maintained that the waiver provision created an ambiguity which should be construed against the drafter, Eby, or resolved by a jury.  The completion certificate, Allgood asserted, could not operate to bar the delay claims because it was not a valid document relied upon by Eby.  In support of this contention, Allgood alleged that, at the time the completion certificate was signed, its work on the project was not in fact complete and it continued thereafter to render services and be paid by Eby for performance under the subcontract.[9]

[9]As evidence of this contention Allgood submitted certain affidavits and post-certificate correspondence between the parties which referred to amendments to the subcontract and additional work to be performed by Allgood due to "condemnation corrections" and "Change Order Proposals."  (R2-38, Plaintiff's Opposition To Defendant's Motion For Summary Judgment, Exhibits).  The payment applications contained in the record include a request for payment for work performed through October 23, 1992. (R1-35, Deposition of Gloria A. Alday, Exhibit 6).  Eby conceded

It also relied on the deposition testimony of Allgood's President, Alday, who stated that, although she apparently executed the document, she did not remember doing so and would not have signed it if she had been aware of its contents because Allgood's work was not completed at that time. In addition, Allgood pointed out that Eby never processed the completion certificate by obtaining all of the necessary signatures and submitting it to the GSFIC for final payment and that final payment was never made.

Before the district court ruled on the motion for summary judgment, Eby submitted a second motion for summary judgment in which it asserted that Allgood's delay claims were foreclosed because it failed to provide timely notice of them as required by the prime and subcontracts. Eby alleged also that certain of Allgood's purported additional costs were traceable to decisions made by the architect and were not actionable because Allgood failed to protest those decisions in accordance with the provisions of the contract documents. To these arguments, Allgood countered that it did comply with the contractual notice requirements and that the delay demands could not have been made until after the projected completion date for the project expired because no delay occurred until then. Finally, it disputed Eby's charge that certain conflicts should have been taken up with the architect.

Thereafter, the district court took the first motion for summary judgment under consideration. It found that the language

---

that it made three additional payments to Allgood after the completion certificate was signed by Alday on June 8, 1992. (R1-31, Brief In Support Of Defendants' Motion For Summary Judgment at 4).

employed by the payment applications and the completion certificate was unambiguous and conclusively barred the delay claims.[10] The court also noted, however, that the completion certificate expressly recognized Allgood's demand for the outstanding retainage. Consequently, the court granted Eby's motion for summary judgment as to the delay claims and denied it with respect to the retainage claim. In view of its decision on the first motion, the court found that Eby's second motion for summary judgment was moot. It is this order of the district court which is now before us for review.

## II. THE STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo. Jaques v. Kendrick,* 43 F.3d 628, 630 (11th Cir.1995). Because federal jurisdiction of this case was based upon diversity of citizenship, the substantive law of Georgia governs its resolution. *Flintkote Co. v. Dravo Corp.,* 678 F.2d 942, 945 (11th Cir.1982).

## III. DISCUSSION

The only issue presented to us on appeal is whether the provisions of the payment applications or the completion certificate foreclosed Allgood's causes of action for delay. Allgood advances the same arguments here that it raised in the district court. It contends that the payment applications waived

---

[10]Although the court cited certain waiver provisions contained in the payment applications, it did not expressly interpret their legal meaning. Instead, the court focused its analysis on the completion certificate. In doing so, it rejected Allgood's contention that the document had no legal force and effect.

nothing more than its right of lien against the premises and did not abandon its actionable claims against Eby arising under the subcontract, which it says only became due upon the completion of its work. It also asserts, for the first time on appeal, that the completion certificate, if it should be accorded any effect at all,[11] operated only to release claims against the "Owner" of the project, i.e., the state. [12] It submits that the items of compensation it seeks from Eby could not have been discharged by this document because Eby was not named in it. As authority for this contention, Allgood relies on *Lackey v. McDowell,* 262 Ga. 185, 415 S.E.2d 902 (1992).

We first deal with the effect of the completion certificate as addressed in *Lackey.* Although an appellate court generally will not consider an argument raised for the first time on appeal, we have the discretion to decide a pure question of law not presented to the district court in the appropriate circumstances. *Narey v. Dean,* 32 F.3d 1521, 1526-27 (11th Cir.1994); *United States v. Southern Fabricating Co., Inc.,* 764 F.2d 780, 781 (11th Cir.1985). Whether *Lackey* governs the effect of the completion certificate is a question of law which should be addressed because the answer conclusively resolves the issue of whether Eby may rely on it to bar Allgood's delay claims. *See Narey,* 32 F.3d at 1527.

In *Lackey,* an emergency medical technician dispatched to the

---

[11]Allgood continues to maintain that the completion certificate was not a legally enforceable instrument because it was not validly executed or processed and because Eby never relied on it as a waiver of the claims brought in this action.

[12]Allgood also pursues several additional subsidiary grounds in its brief which do not merit discussion.

scene of an automobile accident was injured by a third party after his arrival. He and his wife settled with the third party's insurance company by executing a general release, which stated:

> "We ... release and forever discharge [third party] and *any other person* ... chargeable with responsibility or liability ... from all claims ... arising from any act or occurrence up to the present time, and particularly ... an accident that occurred on or about the 24th day of February, 1989, at or near 5-16 south of Augusta Avenue."

*Lackey,* 262 Ga. at 185, 415 S.E.2d at 902 (quoting release) (emphasis supplied by the court). Later, the technician brought suit against the person to whom he had been sent to render assistance, McDowell. The trial court subsequently denied McDowell's motion for summary judgment and McDowell appealed. The Court of Appeals of Georgia reversed, holding that the unambiguous language of the agreement demonstrated that Lackey intended to release his claims against "any other person," which included the third party. *McDowell v. Lackey,* 200 Ga.App. 506, 408 S.E.2d 481 (1991) (subsequent history omitted). The Supreme Court of Georgia granted certiorari and reversed the appellate court. *Lackey,* 262 Ga. at 185, 415 S.E.2d at 902. The court announced a bright-line rule that "[o]nly those parties *named* in the release will be discharged by that instrument." *Id.* at 186, 415 S.E.2d at 903 (emphasis in the original). The court stated also that "[t]his should eliminate the need to inquire as to the intent of the parties to releases executed after the date of this opinion." *Id.,* 415 S.E.2d at 903.[13]

We have found no cases in which the Georgia courts have

---

[13]*Lackey* was decided on April 30, 1992. The completion certificate in this case was executed in June 1992.

applied the *Lackey* rule in an action upon a contract rather than in a tort suit, but we can think of no reason why the nature of the underlying action should limit its scope. " "A release is a contract itself, and principles of law applicable to contracts generally are also applicable to releases.' " *McDowell,* 200 Ga.App. at 507, 408 S.E.2d at 482 (quoting 1 E.G.L. Accord & Satisfaction, § 16 (1988 Rev.)). We conclude, therefore, that *Lackey* applies to the release contained in the completion certificate.

As noted above, the completion certificate was addressed to the GSFIC. Even if it was an enforceable instrument,[14] it specifically released claims against the "Owner" of the property. In *Lackey,* the Court explained that, by being "named" in a release, "we mean being identified either by proper name or such other description as leaves no question of the identity of the party released." *Lackey,* 262 Ga. at 186 n. 3, 415 S.E.2d at 903 n. 3. Eby was not identified by proper name or otherwise as a released party in the certificate. Furthermore, Eby does not contend, and we do not find, that it was encompassed by the term "Owner" as used in the form. The fact that Allgood mailed the certificate to Eby for further processing does not alter this analysis. We agree with Allgood, therefore, that under *Lackey,* the certificate could not have served the purpose of releasing its delay claims against Eby. Accordingly, we hold that the district court erred by granting

---

[14]We doubt that the release was binding in view of the fact that Allgood apparently never received the consideration for it, i.e., payment of the retained funds. Because we base our decision on *Lackey,* however, we need not decide this issue.

summary judgment to Eby on the basis of the completion certificate.[15]

Next, we consider the scope of the payment applications. As with the completion certificate, Allgood reasons that the payment applications did not discharge its claims against Eby because Eby was not identified as a released party. It is true that the particular clause contained in the applications upon which Eby relied did not refer to Eby. This paragraph of the forms did not name any party to the construction project. Rather, it waived "all claim or rights of lien ... upon the premises ... except for claims for right of lien for contract and/or change order work performed to extent [sic] that payment is being retained or will subsequently become due." (R1-35, Deposition of Gloria A. Alday, Exhibit 6). Allgood urges us to hold that this language extended only to its right of lien against the property and not to its delay claims against Eby under the subcontract. On the other hand, Eby submits that "all claim or rights of lien" referred not only to claims of lien upon the premises, but also to any type of claim Allgood may have had against Eby.

Neither party has cited any controlling Georgia authority directly on point in support of their respective positions. The releases at issue in the cases relied upon by both sides are distinguishable from the language employed in the payment applications.[16] Of the Georgia cases called to our attention, the

---

[15]The district court may have concluded differently on this matter had the *Lackey* decision been brought to its attention.

[16]For instance, Eby cites *Warrior Constructors, Inc. v. E.C. Ernst Co., Inc.,* 127 Ga.App. 839, 195 S.E.2d 261 (1973), in which

closest, however, is *J.L. Williams & Co., Inc. v. West Concrete Co.,* 139 Ga.App. 208, 228 S.E.2d 196 (1976). In that case, a subcontractor released

> "any and all lien or claim or right of lien under the Statutes of the State of Georgia relating to Mechanic's liens on the above described premises and improvements thereon, and on the monies or other considerations due or to become due from the owner, on account of labor or services, material, fixtures or apparatus heretofore furnished to this date by the undersigned for the above described premises."

*Id.* at 208-09, 228 S.E.2d at 197 (quoting release). The court held that this language "waived plaintiff's lien rights vis-a-vis the owner, not the general contractor." *Id.* at 210, 228 S.E.2d at 198.

In a similar fashion, the payment applications relinquished "all claim or rights of lien ... upon the premises." Guided by *J.L. Williams & Co., Inc.,* we view this terminology as releasing lien claims against the property, not causes of action against Eby under the subcontract. Thus, the district court could not have granted summary judgment to Eby on the basis of this particular clause of the payment applications.

However, in addition to the language waiving "all claim or rights of lien ... upon the premises," the payment applications contained another provision which stated:

> I hereby certify that the work performed and the materials supplied to date, as shown on the above, represent

---

the release stated that the " "[Subcontractor] does hereby release [General Contractor] from any and all claims of every nature arising under or by virtue of said subcontract'." *Id.* at 840, 195 S.E.2d at 261-62 (alteration in the original). We cannot tell from the opinion whether the General Contractor was expressly named in the release. Putting that issue aside, however, a release "from any and all claims of every nature arising under or by virtue of said subcontract," is obviously much broader in scope than a waiver of "all claim or rights of lien ... upon the premises."

the actual value of accomplishment under the terms of the contract (and all authorized changes thereto) between the undersigned and Martin K. Eby Construction Co., Inc., relating to the above referenced project.

(R1-35, Deposition of Gloria A. Alday, Exhibit 6). Unlike the completion certificate and the clause of the payment applications relied upon by Eby, this section of the payment applications specifically identifies Eby.[17] By this provision of the applications, Allgood appears to have certified that the amount billed represented the actual value of its performance for the periods of time indicated by the dates of the applications. This would seem to bar recovery for any additional costs allegedly incurred by Allgood during the course of construction for the periods of time represented by the invoices.

Although the parties have indicated that Allgood submitted approximately twenty-four requests for payment, the record contains only twenty-two.[18] The first twenty are each for a period of about one-month's duration, beginning on April 16, 1990 and ending on March 20, 1992. The record does not include invoices for the months of February 20 to March 20, 1991, or January 20 to February 20, 1992. The last two payment applications in the record were for March 20, 1992 to May 25, 1992, and May 20, 1992 to October 23, 1992.

In the complaint and amended complaint, Allgood alleged that

---

[17]By addressing the various clauses of the payment applications separately, we do not mean to suggest that Georgia law requires that a released party be named in the same paragraph of the agreement that contains the release language.

[18]There are actually twenty-three copies of invoices in the record, but two are duplicates.

the project was scheduled for completion on September 23, 1991, but that construction continued until March 1993. (R1-1, Complaint at ¶ 12, and R1-23, Amended Complaint at ¶ 12). It is not clear from the record whether Allgood participated in any ongoing construction after the date of its last invoice, October 23, 1992.

Allgood has maintained throughout these proceedings variously that its delay claims could not have been lodged prior to the expiration of the original completion date because no delay occurred until then and that it could not have calculated its additional costs until after it concluded its work on the project. Eby countered in its second motion for summary judgment that, to the contrary, the timing of Allgood's delay claims was governed by certain notice requirements contained in the prime contract, which it contended were expressly incorporated into the subcontract and with which Allgood failed to comply. Eby argued that, when considered together, these provisions required Allgood to provide notice of damages caused by delay within fifteen days of each responsible event. (R2-45, Brief in Support of Defendants' Second Motion for Summary Judgment at 3-4).[19] Eby asserted that the delays here occurred from the very beginning of the project and that any notice Allgood provided was both untimely and insufficient.

By way of answer, Allgood referred to a provision of the subcontract concerning delays which states:

---

[19]To support these contentions, Eby cited Allgood's answers to certain requests for admissions. For reasons unknown, Eby failed to make the prime contract a part of the record in the case. A copy of the subcontract was included in the record as Exhibit 4 to the deposition of Terry N. Peavy, a Superintendent for Allgood. (*See* R2-43).

SECTION 11. DELAYS. Subcontractor shall not be entitled to an adjustment in time or Subcontract price for delays or damages caused by the Owner and/or Architect-Engineer, inclement weather, strikes, or other delays or damages unless such price change or time extension is approved in writing by the Owner or its authorized representative. *Any damages which Subcontractor alleges that the* Owner, Architect-Engineer, *Contractor,* other Subcontractor, or any other party for whom Contractor may be liable *has caused him or is causing him must be filed in writing with the Contractor within ten (10) days from the commencement of the alleged damage and a full accounting filed within ten (10) days after the extent of damage is known or the cause for damage ceases, whichever is the sooner; otherwise, any such claims will be considered void.*

(R2-43, Deposition of Terry N. Peavy, Exhibit 4) (emphasis added).

Allgood also introduced into evidence copies of letters it sent to Eby throughout the course of construction in which it raised the issue of increased costs due to delay and which it contended complied with the notice requirements.[20] (R2-49, Exhibits A through D and F through H).

Whether the letters complied with the notice provisions of the prime and subcontracts and whether Allgood was able to calculate the value of any or all of its demands for relief prior to the completion of construction are issues that were not developed in the district court.[21] These are disputed questions of fact that

---

[20]The letters were dated September 25, 1990, November 18, 1990, February 21, 1991, October 11, 1991, February 21, 1992, August 7, 1992 and January 20, 1993. The record also includes an October 18, 1991 letter from Eby to Allgood in which Eby responded to certain demands for delay damages. (R2-49, Exhibit E).

[21]It is not clear from the record whether there were distinct periods of delay throughout the course of construction for which Allgood could or should have calculated the specific amounts of damages it seeks to recover.

cannot be resolved on the current record.[22]  Nor did the district court consider the effect of Allgood's certification to Eby that the amounts sought by the periodic payment applications represented the actual value of Allgood's performance for the specified periods of time.  These are the issues upon which Allgood's delay counts turn.  Accordingly, upon remand, the district court should focus on these factors in deciding whether any or all of these counts are viable.[23]

IV. CONCLUSION

In keeping with the foregoing analysis, we REVERSE the district court's grant of summary judgment in favor of Eby on Allgood's delay claims and REMAND the case to the district court for further proceedings consistent with this opinion.

---

[22]Allgood contends on appeal that whether Eby waived any alleged failure of Allgood to comply with the technical notice requirements is also a disputed fact.  (Appellant's Initial Brief at 5 n. 1).

[23]The court will also have before it the resolution of Allgood's retainage claim.