**ASSOCIATED MECHANICAL CONTRACTORS, INC.,**
Plaintiff,

v.

**MARTIN K. EBY CONSTRUCTION CO., INC., Defendant.**

No. 5:95–94–3 (WDO).

United States District Court,
M.D. Georgia,
Macon Division.

Nov. 19, 1997.

John Flanders Kennedy, Macon, GA, David R. Hedrick, Victoria H. Tobin, Atlanta, GA, for Plaintiff.

Wallace Warren Plowden, Jr., Macon, GA, George D. Wenick, Atlanta, GA, for Defendant.

### ORDER

OWENS, District Judge.

This case is before the court on defendant Martin K. Eby Construction Company's ("Eby's") third motion for summary judgment. At issue is whether plaintiff Associated Mechanical Contractors, Inc. ("AMC") complied with the prime and subcontracts in attempting to submit notice of its intent to bring delay claims against Eby. Oral argument was heard on the motion on October 21, 1997. In addition, defendant Eby orally presented a motion to strike the affidavits of Kenneth Yakel and Daniel Harrity, both of which were submitted by AMC in support of its contention that summary judgment should be denied. Based upon the arguments of counsel, the relevant case law, and the record as a whole, the court issues the following order.

### BACKGROUND

The case arises out of the primary and subcontracts to build the Dooley Correctional Facility in Unadilla, Georgia. The basic facts of the case were set forth in the court's order of May 14, 1997, in which the court denied defendant's second motion for summary judgment. *See Associated Mechanical Contractors, Inc. v. Martin K. Eby Construction Co., Inc.*, 964 F.Supp. 1576 (M.D.Ga.1997). In addition, the argument currently before the court—that the subcontractor failed to provide timely notice of its intent to bring delay claims as dictated by the express terms of the contract—was made by defendant Eby against another of the subcontractors, Allgood Electric Company ("Allgood"), in a separate but related case. *See Allgood Electric Co., Inc. v. Martin K. Eby Construction Co., Inc.*, 959 F.Supp. 1573 (M.D.Ga.1997). In that case, the court granted summary judgment for the defendant, finding that the plaintiff's notice of the delay claims was indeed delinquent and therefore that the delay claims were void under the express terms of the contract. *Id.* The *Allgood* matter is currently on appeal from the court's granting of summary judgment.

The court recognizes that these two cases are factually and legally separate and distinct. Nevertheless, because both cases involve the same construction project, the prime contract and subcontract at issue as well as many other relevant facts are identical in both cases. Therefore, while some facts may differ, the same basic analysis used in the *Allgood* case applies in this matter as well.

## FACTS

### I. The Prime Contract and Subcontract

Two contract provisions are relevant to the issue of the timeliness of notice. First, the prime contract between Eby, the prime contractor, and the Georgia Building Authority, the owner of the project, contained a provision stating that the subcontractor agreed to make all claims for damages to the contractor in the same manner and within the same time as the contractor had to make claims to the owner—that is, within 15 days of the occurrence of the event giving rise to the damage claim. *See Allgood,* 959 F.Supp. at 1575–76 (laying out relevant contract provisions).

Second and more importantly, Section 11 of the subcontract between Eby and AMC specifically addressed the parties' respective rights and duties in the event of project delays. *See Allgood,* 959 F.Supp. at 1576. Because of its centrality to the present motion, that section is reprinted here in its entirety.

> SECTION 11. DELAYS. Subcontractor shall not be entitled to an adjustment in time or Subcontract price for delays or damages caused by the Owner and/or Architect–Engineer, inclement weather, strikes, or other delays or damages unless such price change or time extension is approved in writing by the Owner or its authorized representative. Any damages which Subcontractor alleges that the Owner, Architect–Engineer, Contractor, other Subcontractor, or any other party for whom Contractor may be liable has caused him or is causing him must be filed in writing with the Contractor within ten (10) days from the commencement of the alleged damage and a full accounting filed within ten (10) days after the extent of damage is known or the cause for damage ceases, whichever is the sooner; otherwise, any such claims will be considered void.

### II. Project Delays and Notice of Delay Claims

AMC asserts in its complaint that from the very beginning the project was "substantially delayed and disrupted during the Start–Up portion of the Project as a result of several changes issued by Eby and by Eby's extensive resequencing of work" (Complaint, ¶ 13). AMC claims these delays resulted in there being little or no work to do on some days, while the work was accelerated on other days to make up for lost time. In addition, AMC claims the resequencing of the project resulted in the work being performed less efficiently, thereby adding to AMC's costs. At a September 20, 1990, Project Managers Meeting, at which AMC's representatives were in attendance, it was estimated that the project was 29 calendar days behind schedule.

AMC submitted to Eby ten letters relating to the delays involved with the project which it argues constituted adequate notice of its intent to bring delay claims. The first of these letters is dated August 11, 1990, while the last one was sent over a year later on August 21, 1991. Some of these letters detail delays and costs associated with a specific portion of the job, while others address the delay in the overall schedule of the project.[1]

It is clear from the minutes of the Project Manager Meetings that Eby acknowledged the delays throughout the course of the project, and worked with the subcontractors to regain the original project schedule. In addition, Eby worked with AMC to quantify the effects of the delays and to facilitate resolution of all claims. Eby's correspondence with AMC is set forth in relevant part below.

On September 9, 1991, Eby sent AMC a letter advising that:

> Eby acknowledges that there have been days added to the original contract completion date. Enumeration for these changes is strictly governed by the Prime Contract General Conditions authored by the Georgia Building Authority. Article E–1 5 of this document is explicit as to the allowable cost that Eby will receive for contract changes. This document is made part of your subcontract by reference on page 14, item 23.1.

On April 20, 1992, Eby advised AMC that:

---

1. Because the court's present analysis is based upon the time the letters were sent rather than upon their content, it is unnecessary to reprint them here. Rather, for purposes of this order, the letters are presumed to have been adequate in content to constitute sufficient notice.

Upon review of AMC's claim, Eby questions whether AMC has properly provided the necessary notices.

\* \* \* \* \* \*

Neither the content of this letter nor any effort by Eby to aid AMC in its prosecution of this claim are to be construed as an acknowledgement by Eby as to the validity of any claim submitted by AMC, nor shall either act as a waiver of any rights or defenses available to Eby. Eby hereby reserves all of its rights and defenses against AMC which are provided by the contract between the parties and the applicable law.

### DISCUSSION

Because jurisdiction in this case was based on diversity of citizenship, the substantive law of Georgia controls. *Flintkote Co. v. Dravo Corp.,* 678 F.2d 942, 945 (1 1th Cir. 1982). As the court noted in the *Allgood* matter, while the sufficiency of notice generally depends on whether the defendant had actual notice of the delays for which the plaintiff is seeking damages, in this case there was the additional requirement imposed by both the prime and subcontracts that notice be timely. *Allgood,* 959 F.Supp. at 1579. Thus, even assuming that each of the letters sent by AMC contained language sufficient under Georgia law to satisfy the notice requirement, unless defendants were notified within ten days of the commencement of the alleged damage, then AMC's delay claims are void under the express terms of the subcontract.

█ The complaint itself shows that AMC was aware of the project delays from the very beginning, that is, from early May of 1990. Moreover, as shown by the minutes of the September 20, 1990, Project Managers Meeting, as well as AMC's first letter to Eby, AMC was able to estimate the length of the delay at 29 calendar days. Nevertheless, AMC did not provide Eby with notice of an intent to seek damages on account of those delays until August of 1990 at the very earliest, and most likely not until November of 1990. This constitutes at least two months after the beginning of delays—well beyond the ten day period provided for in the sub-

contract for notice of delay claims—that AMC waited to tell Eby of its intent to seek damages for the delays.

AMC argues that it did not submit the required notice until November of 1990 because up until that time it believed Eby's representations that the project would be caught up to the original schedule. As the court noted in the *Allgood* decision, under this interpretation of the subcontract, there would be no possibility of claims for delay until after the conclusion of the original schedule, as only then can the subcontractor claim it was "damaged" by a delay. As long as the end of the original schedule was not reached, there was still the chance that the time could be made up, and so there would be no delay claim available.

This interpretation is refuted by the time limits provided by Section 11 of the subcontract for bringing a delay claim. Under Section 11, the subcontractor was to first submit notice of the intent to bring a delay claim within ten days of the beginning of the damage attributable to the delay, and then was to submit an accounting of the amount of the damage within ten days of the time that the amount of the damage became known. If AMC's interpretation of the contract were the correct one, then the ten day notice requirement would be superfluous, because no delay claim would be available until the completion of the original contact schedule. *See Allgood,* 959 F.Supp. at 1580 (illustrating the fallacy of AMC's interpretation of Section 11 with an analogy to a claim for a time extension for completion of the contract).

AMC argues that this case is materially different from the *Allgood* case because until very recently there has been little discovery conducted in the case and therefore there has not been an adequate opportunity to determine the relevant facts. The court disagrees. While it is true that discovery was only recently reopened after having been stayed for some time, all facts relevant to the issue of whether notice was timely are already in the record.

AMC also argues that this case differs from *Allgood* in that here there is ample evidence that both Eby and AMC believed the project delays would be reversed and the

original project schedule regained. This may be true, but it does not change the plain meaning of Section 11, which says that notice must be provided within ten days of the commencement of the alleged damage. If the delays now complained of caused damages to AMC, then notice should have been sent: the chances of recovering the original project schedule are irrelevant. There is no dispute that the delays now complained of were present from May or June of 1990.

■ In addition, the court finds no merit in AMC's argument that Eby waived any defense based on untimely notice by acknowledging the project delays. As the court stated in *Allgood*, "Eby's knowledge in the present case that there were problems with the scheduling of the project is not tantamount to knowledge that [AMC] was incurring monetary damages or that [AMC] intended to file a claim." *Allgood*, 959 F.Supp. at 1581.

As in *Allgood*, the record simply does not support the position that Eby's affirmative acts or omissions somehow could have caused AMC to believe it was not required to provide timely notice of its intent to bring claims for delay damages. To the contrary, Eby's correspondences with AMC in 1990 and 1991, although after the fact, support at least a weak inference that Eby always maintained that the contract had to be adhered to in resolving any problems or claims related to completion of the contract and remuneration. Of course, this weak inference is enough because it is AMC's burden to show a material issue of fact as to whether Eby waived its right to demand compliance with Section 11. The court finds that plaintiff has not met that burden.

AMC's other arguments essentially repeat those rejected above, and the court finds them to be equally without merit.

Viewing the facts in a light most favorable to AMC, the court finds that even assuming the letters sent to Eby constituted adequate notice of AMC's intent to bring delay claims, notice was not provided within the time period provided for in the contracts. Accordingly, AMC's delay claims are void.

### CONCLUSION

For the above stated reasons, and having been carefully considered, defendant's third motion for summary judgment is **GRANTED**.

In light of the court's ruling, defendant Eby's motion to strike the affidavits of Daniel Harrity and Kenneth Yakel is **DENIED AS MOOT**.