[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 9, 2001
THOMAS K. KAHN
CLERK

_____

No. 00-10784
_____

D.C. Docket No. 95-00094-CV-WDO-5-3

ASSOCIATED MECHANICAL
CONTRACTORS, INC.,

Plaintiff-Counter-Defendant-
Appellant,

versus

MARTIN K. EBY CONSTRUCTION
COMPANY, INC.,

Defendant-Counter-Claimant-
Appellee.

_____

Appeal from the United States District Court for the
Middle District of Georgia

_____

**(November 9, 2001)**

Before EDMONDSON, HILL and GIBSON*, Circuit Judges.

JOHN R. GIBSON, Circuit Judge:

_____

*Honorable John R. Gibson, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

Associated Mechanical Contractors, Inc., a subcontractor on a Georgia prison construction project, appeals from the district court's entry of summary judgment against it in its suit against the prime contractor on the project, Martin K. Eby Construction Company, Inc. Associated attacks the district court's holding that its claim for delay and inefficiency damages was barred because it failed to give Eby timely notice of its intent to seek those damages. Associated also argues that the district court should have awarded it interest on the final or "retainage" payment under the subcontract. We reverse and remand as to the part of the claim for delay damages caused by events occurring after July 1990, affirm as to the part of that claim arising out of the events of May-July 1990, and affirm as to the interest claim.

We state the facts in the light most favorable to Associated, the non-movant. Associated and Eby signed a $3,150,000 subcontract under which Associated was to perform the mechanical, heating, ventilation, air-conditioning, and plumbing work in building the Dooly Correctional Center. The subcontract specified that Associated's work would begin on or before May 2, 1990 and would be complete by July 19, 1991. The subcontract contained the following provision governing compensation for delays:

SECTION 11.  DELAYS. . . . Any damages which Subcontractor alleges that the Owner, Architect-Engineer, Contractor, other Subcontractor, or any other party for whom Contractor may be liable has caused him or is causing him must be filed in writing with the Contractor within ten (10) days from the commencement of the alleged damage and a full accounting filed within ten (10) days after the extent of damage is known or the cause for damage ceases, whichever is the sooner; otherwise, any such claims will be considered void.

The subcontract also provided that Associated would be bound by the Prime Contract documents, specifically Article E-37 of the Prime Contract's General Conditions.  Under Article E-37, the subcontractor agreed to make all claims for damages against the prime contractor in the same manner provided in the Prime Contract for claims by the prime contractor against the owner, which was spelled out at Article E-16(b).  That article provided:  "No claim of the contractor for damage shall be valid unless written notice thereof shall have been received by the owner by registered mail within 15 days after occurrence of the event on which the claim is based."

From the beginning, the prison project was plagued by delays.  Because the footings for the buildings were not finished on time, Associated could not begin work until June 18, 1990, in contrast to its scheduled start date of May 2.  According to Associated's project manager, Daniel Harrity, Eby acknowledged the

delay at project meetings on July 6 and 10, but announced at an August 7 meeting that it would make up the lost time by revising the construction schedule.

By letter of August 11, 1990, Associated complained to Eby that Associated's excavation and backfilling work was being held up improperly by the people who were supposed to supervise and inspect Associated's compaction for the owner.

The project continued to fall further behind schedule over the next month, mainly due to problems with the masonry work, which affected Associated's work schedule because Associated's work had to be imbedded in the masonry. By September 4, Associated's work on two of the buildings had ground to a halt. The next day, September 5, 1990, Associated wrote Eby complaining that it could not be responsible for making sure the masonry contractor's work was up to specifications.

On September 13, 1990, Associated wrote Eby complaining of delay from yet another source–Eby's failure to transmit Associated's "submittal data" to the project architect or engineer for approval. According to the letter, Associated had just learned of the problem, although it had been going on since April.

Associated sent letters on October 1, 1990 and November 8, 1990, notifying Eby that Associated was suffering delay damage from the project being twenty-nine days behind schedule.

At the November 13 project meeting, Eby announced that the masonry subcontractor had defaulted. Associated wrote Eby again on November 26, 1990, saying that without any bricklayers on site, Associated would have to lay off workers on November 30 because there was nothing for them to do. Associated said it would incur expenses from this delay and would expect compensation. Again, on February 15, 1991, Associated wrote Eby complaining that the masonry problem and other changes had delayed its own work, and that Eby's attempt to make up lost time by accelerating the work was going to cost Associated money.

From early 1991 through the end of 1992, when the project was finally finished, there was a constant stream of correspondence between Associated and Eby about the delays and problems on the project. Sometimes the letters showed them negotiating a resolution of responsibility and costs for delays and the consequent need to reschedule and accelerate remaining work, and sometimes they were simply blaming each other for the problems. Associated cited a variety of failures by other contractors that interfered with its ability to get its own work done, including continuing problems with the masonry work (especially

condemnation of the walls on one building), problems with painting and flooring, and unclear or inadequate specifications in the building plans.  Associated repeatedly described in its letters expenses it incurred from the rescheduling of its work, which sometimes left it with idle hands and sometimes caused it to have to pay overtime or to be short of workers.  In November 1992 Associated presented Eby with a Request for Equitable Adjustment, asking for compensation of $737,343.96 and a 462-day time extension on its contract completion date (originally July 19, 1991).

When Eby denied Associated's request, Associated brought this diversity action for breach of contract, equitable adjustment, and quantum meruit.  Two years after filing suit, Associated amended its complaint to add a claim for unpaid retainage.

Eby moved for summary judgment four times on a variety of theories.  First, Eby argued that language in Associated's periodic applications for payment released Eby from all claims relating to the work performed through the date of each application.  At that time Eby was being sued by another subcontractor on the Dooly project, Allgood Electric Company, and Eby made a similar argument in the Allgood case.  The district court granted summary judgment in Allgood, but this court reversed.  Allgood Elec. Co. v. Martin K. Eby Construction Co., 85 F.3d

1547 (11th Cir. 1996) (Allgood I). Because of the similarity between Eby's argument in Allgood I and its argument against Associated in this case, once we handed down Allgood I, the district court in this case denied Eby's first motion for summary judgment.

In its second summary judgment motion, Eby argued that another provision of the payment applications acknowledged that the payment received was the "value" of the work Associated had performed for the time period covered by the payment application, and therefore Associated had effectively admitted that it had been paid all Eby owed it for the various periods. The district court rejected this argument. It held that the word "value" had a special meaning under the contract documents, referring only to accomplishment of certain tasks, rather than referring to the actual monetary value of the work performed during the time period. Associated Mech. Contractors, Inc. v. Martin K. Eby Constr. Co., 964 F. Supp. 1576, 1581 (M.D. Ga. 1997) ("[T]he language refers to the value of accomplishment under the contract and all underlined changes thereto."). Accordingly, Associated's statements in the payment applications did not release Eby from Associated's claims for delay damages. Id. at 1582.

Eby then filed a third summary judgment motion, contending that Associated had failed to give timely notice of its intent to seek delay damages, as

required by section 11 of the subcontract and by the section incorporating notice requirements of the prime contract.

Eby had succeeded on this argument in its case against Allgood, where the district court had granted Eby summary judgment, Allgood Elec. Co. v. Martin K. Eby Constr. Co., 959 F. Supp. 1573 (M.D. Ga. 1997) (Allgood II), and this court affirmed in an unpublished opinion. 137 F.3d 1356 (table), No. 97-8555 (11th Cir. Feb. 24, 1998). Allgood had sent Eby seven letters, from September 1990 to January 1993, complaining of delays. Allgood considered these letters sufficient under the subcontract and the prime contract to give notice of delay claims. The court assumed for the sake of argument that the content of the notices was adequate, but focused on the timeliness of the notice. 959 F. Supp. at 1579. Allgood 's evidence demonstrated that it was aware of delays from the very beginning of the project, but Allgood did not give notice until six months later. Id. at 1579-80. Allgood tried to excuse its failure to give notice by arguing that "there could be no recovery for delays until after the contract completion date because there was no delay until that time." Id. at 1579. The district court rejected this reasoning as inconsistent with the two-tier notice plan in section 11 of the subcontract, which requires notice within ten days of commencement of the damage and then a full accounting within ten days of the time the extent of the

8

damage is known or the cause of the damages ceases. See id. at 1580. The court

held that it was obvious to Allgood from the beginning that the project was behind

schedule and that the delay would affect Allgood's performance of its duties under

the subcontract. Id. Allgood's failure to comply with the notice requirements of

the contract prevented it from recovering delay damages. Id. at 1581. This court

held that the district court did not err in concluding Allgood had failed to comply

with section 11 of the subcontract. No. 97-8555, slip op. at 2.

In the present litigation, Associated likewise maintained it had satisfied its

obligation to give notice by sending ten letters to Eby, ranging from August 11,

1990 to August 21, 1991. As in Allgood II, the district court assumed the

sufficiency of the content of the notices, but focused on the timing. Associated

Mech. Contractors , Inc. v. Martin K. Eby Constr. Co., 983 F. Supp. 1121, 1123

n.1 (M.D. Ga. 1997). The court held:

> The complaint itself shows that [Associated] was aware of the
> project delays from the very beginning, that is, from early May of
> 1990. Moreover, as shown by the minutes of the September 20, 1990,
> Project Managers Meeting, as well as [Associated's] first letter to Eby,
> [Associated] was able to estimate the length of the delay at 29
> calendar days. Nevertheless, [Associated] did not provide Eby with
> notice of an intent to seek damages on account of those delays until
> August of 1990 at the very earliest, and most likely not until
> November of 1990. This constitutes at least two months after the
> beginning of delays--well beyond the ten day period provided for in
> the subcontract for notice of delay claims--that [Associated] waited to
> tell Eby of its intent to seek damages for the delays.

9

Id. at 1124.

Associated argued that it did not give notice until August because until then it had believed Eby's representations that the project would be brought up to schedule. The court held that, under the two-tier notice scheme of section 11, uncertainty about the amount of damages did not excuse Associated from the duty of notifying Eby of delay within ten days of its commencement. Id. at 1124-25. Associated argued it should be given more time for discovery, but the court held that "all facts relevant to the issue of whether notice was timely [were] already in the record." Id. at 1124. Associated maintained that Eby had actual notice of the delays without Associated giving notice, but the court held that the point of the notice provision was not only to notify Eby of the fact of delay, but also of the fact that Associated was incurring damages, for which it intended to hold Eby liable. Id. at 1125 (quoting Allgood II, 959 F. Supp. at 1581). The court held that nothing in Eby's acts or omissions could have justified Associated in believing that Eby excused it from complying with the subcontract's notice provisions. Id. The court therefore granted summary judgment to Eby on Associated's delay claims. Id.

Associated still had pending its claim for retainage, so the judgment was not yet final. In July 1999 Eby voluntarily paid $231,820.09 of the retainage, rendering that much of Associated's claim moot. Associated's only outstanding claims then

were for $23,943.28 of principal, interest on that amount, and interest on the $231,820.09 from May 20, 1997, when it filed the claim, to July 1999. Eby moved for summary judgment on the interest claim. The district court granted the motion, holding that Associated had failed to satisfy three conditions precedent to Eby's duty to pay the retainage: (1) Eby had not been paid the retainage by the owner; (2) Associated had not executed and filed a release with Eby; and (3) all disputes between the parties had not been settled, as the pendency of this case demonstrated. The court held that under Georgia law, prejudgment interest does not accrue until all conditions precedent are satisfied, because no payment is due until then. Therefore, no interest was due, and Eby was entitled to summary judgment on the prejudgment interest claim.

The parties stipulated to dismiss those claims and counterclaims on which the court had not yet ruled, and the court at last entered a final, appealable judgment.

I.

We review de novo the district court's grant of summary judgment. Allgood I, 85 F.3d at 1551. Georgia law applies to this diversity contract dispute. Id.

Associated's argument for reversal on its delay damages claim is very similar to the argument Allgood made and lost before this court. Allgood argued that

section 11 of the subcontract required notice within ten days of the "commencement of damages," not within ten days of an event that might later cause damages. Allgood argued that while it knew there were delays from the very beginning of the project, those delays could not amount to damages until expiration of the scheduled completion date; therefore, there was no duty to give notice until that time. The district court held that the two-tier notice requirements of section 11 required Allgood to give notice both at the time it began to incur damages and at the time they became quantifiable, Allgood II, 959 F. Supp. at 1580, and we affirmed, 137 F.3d 1356 (table), No. 97-8555 (11th Cir. Feb. 24, 1998).

Associated relies on the same "commencement of damages" language and also admits that it knew of certain delays as early as May and June 1990. See First Amended Complaint ¶ 13 (detailing delay and disruption during start-up portion of work in May-July). It argues the delays did not constitute damages because Associated and Eby both hoped that the early schedule slippage might be recouped. This is just a variation on the argument rejected in Allgood II, that damages did not commence until it was possible to quantify them. Associated is arguing that the delays it admittedly endured from May through July might have been mitigated, thus reducing or even eliminating the final bill it presented to Eby. Eby responds that it was patently impossible for the damages to be eliminated, since once the

12

equipment had sat idle and the overhead had accrued, damages had commenced.

But even without relying on Eby's reasoning, it is clear from the two-tier notice

scheme, as well as the short, ten-day time limit, that the subcontract required

Associated to give notice when it incurred damage, without waiting to see whether

mitigation efforts would be successful.

But even assuming that Associated failed to give timely notice for the delays

suffered from May through July 1990 and that damages for such delays are not

recoverable, from the record before us it appears that those damages are a small

part of the total damages Associated claims for delay and disruption.  By way of

illustration,  the district court held that at the September 20, 1990 project meeting

the parties estimated the length of delay at twenty-nine days.  983 F. Supp. at 1124.

In contrast, Associated's request for equitable adjustment,[1] filed at the end of the

project, sought a 462-day time extension and $737,343.96 in delay costs, which it

attributed to a myriad of things gone wrong on the project.  Associated could not

have suffered 462 days of delay between May and July 1990.  Associated

summarized the causes of the delays as (1) delays associated with the masonry

subcontractor; (2) inadequate specifications which required over 125 requests for

---

[1]This document was an exhibit to the Second Affidavit of Associated's President Clement Mitchell.

13

information and several change orders; (3) failure by the owner and by Eby to grant time extensions and other directions by Eby that caused Associated to have to accelerate some work and delay other work; and (4) scheduling problems that caused Associated to have to perform out-of-sequence work in congested areas. It is obvious that many of these problems occurred after the May-July 1990 period. For example, the project meeting minutes for November 13, 1990 state: "Have received receipt for notification for default to masonry subcontractor." The problems attributable to the defective work and eventual default of the masonry subcontractor allegedly lasted well into 1991. The request for adjustment was replete with copies of correspondence in which Associated notified Eby of ongoing problems from November 8, 1990 to August 4, 1992. As Associated argued below:

> [Associated's] uncontroverted evidence is that the events which resulted in damage to [Associated] were not those which initially postponed [Associated's] mobilization, but rather those which evidenced Eby's failure to fulfill its obligation (and repeated commitment) to overcome the schedule slippage, to return the Project to the planned sequencing of work, and to correct the problems which arose on the Project in the course of construction due to Eby's and one or more of its subcontractors' failure to perform. . . . The situation was exacerbated in the fall of 1990 by the default of Eby's masonry subcontractor and Eby's own failure to properly administer the submittal process.

These events occurring after the May-July 1990 period were not related to those in the earlier period. The language in section 11 of the subcontract states that to preserve any claim for damage, the subcontractor must file its claim in writing within ten days from the commencement of the alleged damage. The timeliness of claims based not on the postponed mobilization, but on discrete events such as the default of the masonry subcontractor, must be evaluated separately from those based on the late start. Because the district court does not appear to have taken into account these damages which were caused by events after July, we must remand for the district court (or the trier of fact, if there is a disputed issue of fact) to determine which claims were barred by failure to give timely notice and which were preserved.

Associated contends that Eby's actual knowledge of delays[2] in the May-July period satisfies Associated's contractual obligation to notify Eby under Georgia law. Associated cites APAC-Georgia, Inc. v. Dep't of Transp., 472 S.E.2d 97, 99-100 (Ga. Ct. App. 1996), in which the court stated: "The key issue is whether DOT

---

[2]Eby contends that the affidavits of Daniel R. Harrity, Associated's senior project manager, and Kenneth Yakel, Associated's senior officer in charge of the Dooly project, are not based on personal knowledge to the extent they discuss what occurred at project meetings they did not attend. Both affiants appended to their affidavits project meeting minutes, apparently prepared and distributed by Eby, which would seem to be admissions of a party. In any case, no aspect of our holding depends upon any part of these affidavits that interprets the meeting minutes.

15

had actual notice of the delays for which APAC seeks damages." In this case, however, actual knowledge of the fact of delay would not satisfy the purpose of the notice provision in the contract. In contrast to the owner-prime contactor situation in APAC, the contract in this case is a subcontract which explicitly takes into account the prime contractor's obligations under the prime contract. The subcontract incorporated the prime contract, under which Eby was required to notify the owner of any claim for damages within fifteen days of the occurrence of the event on which the claim was based. Reading the two contracts together, it is clear that one function of the notice provisions in the subcontract is to permit the prime contractor to include subcontractors' claims in its own notice to the owner. For this reason, the contract between Eby and Associated must be read to require notice that the subcontractor intends to claim damages for the delay, rather than simple notice of the fact of delay. Therefore, we must affirm the summary judgment as to Associated's claim for damages resulting from the delays during the May-July period and reverse as to the claim for damages caused by events after that period.

## II.

The district court held that no interest was due on the retainage Eby paid to Associated in July 1999 because Associated had failed to satisfy three conditions

16

precedent to Eby's obligation to pay retainage, and therefore the claim had not matured. Associated attacks the notion that any of the three clauses bars recovery, but we need not deal with all these arguments, since we must affirm if the district court was correct that even one clause was an unsatisfied condition precedent.

Section 14(5) of the subcontract stated: "The retained percentage and/or final progress payment shall be paid to the Subcontractor after . . . (5) all disputes, claims, liens, causes of action and/or lawsuits which are related in any way to this Subcontract or Subcontractor's performance of the Work are resolved." The pendency of this appeal demonstrates that all lawsuits related to the subcontract have not been resolved. The condition stated in the subcontract was not fulfilled and payment of the retainage was not due. Therefore, interest did not accrue on it.

Associated argues that section 14(5) does not state a condition precedent, but is only a timing provision. This does not gain Associated any ground because whether it is a condition precedent or a timing provision, it points to payment at a time that has not yet come, and interest would not accrue before payment is due. Associated's argumentation on this point is far too sketchy to establish a right to interest.

Associated also argues that, despite having pleaded failure to satisfy conditions precedent as an affirmative defense, Eby waived this theory by failing

to plead it with particularity, as required by Fed. R. Civ. P. 9(c). The specific denial of performance of conditions precedent may be raised by motion as well as by answer. EEOC v. Klingler Elec. Corp., 636 F.2d 104, 107 (5th Cir. 1981) (per curiam); 2 James Wm. Moore, Moore's Federal Practice § 9.04[3] (3d ed. 2001). There can be no doubt that Eby articulated the failure to satisfy section 14(5) in its fourth summary judgment motion and memorandum in support. Eby did not waive its rights under section 14(5).

* * *

We REVERSE and REMAND the judgment of the district court as to Associated's claim for delay damages based on events after the May-July 1990 period, AFFIRM as to its claim for damages arising during that period, and AFFIRM as to its claim for interest on the retainage.